| | | |
|---|---|---|
| THOMAS and MARIE PARHAM | * | IN THE |
| Plaintiffs | * | CIRCUIT COURT |
| v. | * | FOR |
| NUMAX MORTGAGE CORPORATION, et al. | * | BALTIMORE CITY |
| Defendants | * | Case No.: 24-C-02-000151 |

*     *     *     *     *     *     *     *     *     *     *

## MEMORANDUM OF OPINION

This matter comes before the Court on Defendant PB Investment Corporation and PB REIT, Inc.'s (collectively referred to as "PB" or "Defendants") Motion to Dismiss, Plaintiff's Opposition thereto, Defendant's Supplemental Memorandum on Expiration of Statute of Limitations, Plaintiff's Supplemental Memorandum in Opposition thereto, and Defendants' Reply. After conducting a hearing, for the reasons set forth below, this Court will grant Defendants' Motion to Dismiss.

### Factual Background

Numax Mortgage Corporation (hereinafter "Numax") originates, funds or brokers second mortgage loans throughout the United States. Such loans, which are often classified as "High Loan to Value" or HLTV loans, are secured by a second mortgage on residential property where the total outstanding debt on the dwelling often exceeds the fair market value of the property. Such loans are typically made for personal, family or household purposes. Complaint at ¶ 24.

Numax made hundreds of second mortgage loans in the State of Maryland, which were secured by residential real property located in Maryland. Complaint at

1

¶ 25. In each of the second mortgage loans issued, Numax received a promissory note from the borrowers and was identified as the beneficiary of a second mortgage to secure those loans. Complaint at ¶ 26. Subsequent to the closing of the second mortgage transaction, Numax, or its assignees, sold each note and the rights to the notes. Complaint at ¶ 27.

On April 1, 1998, Thomas Parham and Marie Parham (hereinafter "Named Plaintiffs") obtained a secondary mortgage loan from Numax, which was secured by a lien on their residence. The principal amount of the loan was $29,900.00. The interest rate on the loan was 15.990 percent. The last scheduled payment under the loan would be due on May 2, 2018. Complaint at ¶ 31.

At closing, the Named Plaintiffs allege they were charged fees in excess of those permitted under the Maryland Secondary Mortgage Law ("SMLL"), Md. Code, Com. Law, § 12-401, *et seq.* Complaint at ¶ 40. For loans closed before October 1, 1998, the SMLL provided that a lender could collect a loan origination fee "not exceeding the greater of $500 or 4 percent of the net proceeds of a commercial loan of $75,000 or less made under this subtitle or not exceeding $250 or 2 percent of the net proceeds of any other loan under this subtitle." Md. Legis. 761 (1998), *Maryland 1998 Sessions Laws Regular Session Ch. 761,*[1]   The named Plaintiffs claim that the following fees were excessive under the SMLL: a loan origination fee of $1,830.00; credit report fee of $15.75; document preparation fee

---

[1]  For loans made after October 1, 1998, the statute was amended to provide that "the loan origination fee imposed by a lender... may not exceeds the greater of: (i) $500 or 10 percent of the net proceeds of a commercial loan of $75,000 or less made under this subtitle; or (ii) $250 or ten percent of the net proceeds of any other loan made under this subtitle." Md. Code, Com. Law, § 12-405 (a)(2).

2

of \$149.00; underwriting fee of \$499.00; settlement fee of \$150.00; title search fee of \$125.00; title exam fee of \$375.00; title finder fee of \$25.00; insurance fee of \$100.00; release fee of \$175.00; clear title fee of \$150.00; off site closing fee of \$75.00; courier fees of \$200.00; Sate Tax stamps of \$200.00; and recording fees of \$49.00 which, upon information and belief, exceeded the amount of the fees actually paid to a public official or governmental agency for recording the instrument securing the loan. Complaint at ¶ 40.

On January 14, 2002, the Named Plaintiffs filed this purported class action on behalf of themselves and all others similarly situated who were allegedly damaged by the lending practices of Numax. The Named Plaintiffs asserted the following claims against Numax and the other named defendants[2]: Count I: Violation of the SMLL; Count 2: Violation of the Consumer Protection Act ("CPA"), Md. Code, Com. Law, § 13-101 *et seq.*, and Count 3: Illegal Contracts.

In Count I, the Complaint alleges that Numax violated the provisions of the SMLL when it issued secondary mortgage loans to the Named Plaintiffs and Class Members without first obtaining the necessary license or registering with the State. Complaint ¶ 52. Second, Numax violated the SMLL when it routinely charged borrowers, including the Plaintiffs and the Class Members, loan origination fees in excess of 2 percent of the net proceeds of the loan. Complaint at ¶ 53. Third, Numax violated the provisions of the SMLL when it routinely charged borrowers, including the Named Plaintiffs and Class Members, inflated expenses or expenses which were not authorized by the SMLL and facilitated the payment of brokers' and

---

[2]  The other named defendants are those who hold or held "mortgage notes related to the mortgage loans made by (Numax) to Plaintiffs and/or the class."

finders' fees where no separate and distinct agreement existed between the broker and the borrower. Complaint ¶ 54.

In Count 2, the Named Plaintiffs first alleged that Numex violated Sections 13-301(1), (2), (3), and (9) of the CPA by: "(1) engaging in unfair or deceptive trade practices as defined in section 13-301(1) by making false and misleading oral and written statements that had the capacity, tendency, or effect of deceiving or misleading Maryland consumers; (2) engaging in unfair or deceptive trade practices as defined in Section 13-301(3) by failing to state material facts, the omission of which deceived or tended to deceive; and (3) engaging in unfair or deceptive trade practices as defined in Section 13-301(9) through their deception, fraud, misrepresentation, and knowing concealment, suppression and omission of material facts." Complaint at ¶ 62.

Finally, in Count 3, the Named Plaintiffs argued that the loan agreements between the Named Plaintiffs and Class Members and Numax are "void or voidable as illegal contracts against public policy" because (1) Numax "issued secondary mortgage loans to the Plaintiffs and the Class Members without a license," (2) Numax, "although unlicensed, routinely charged borrowers, including the Plaintiffs and Class Members, origination fees in excess of 2 percent of the net proceeds of the loan," and (3) Numax "routinely charged borrowers, including the Plaintiffs and the Class Members, inflated expense or expenses which were not authorized by the SMLL. Complaint at ¶¶ 71-73.

In response to these allegations, PB Investment Corporation and PB REIT, Inc. (collectively referred to as "PB"), filed a Motion to Dismiss arguing that (A) the

4

Named Plaintiffs filed their claims outside the applicable statute of limitations; and (B) that the Named Plaintiffs lack standing to assert the claims discussed above against it. For the reasons set forth below, this Court will grant PB's Motion to Dismiss on both grounds.

### Analysis

In considering a motion to dismiss filed pursuant to Maryland Rule 2-322, the Court must assume the truth of all well pleaded relevant and material factual allegations in the complaint as well as any reasonable inferences that might be drawn from those allegations. *Hogan v. The Maryland State Dental Association,* 155 Md. App. 556 (2004) (citing *Allied Inv. Corp. v. Jasen,* 354 Md. 547, 555 (1999) (other citations omitted)). A claim is properly dismissed when the alleged facts and reasonable inferences, if proven, would still fail to afford relief to the plaintiff. *Id.* (citing *Bobo v. State,* 346 Md. 706, 709 (1997); *Morris v. Osmose Wood Preserving,* 340 Md. 519 (1995)). The Court is limited to examining only the sufficiency of the allegations in the pleading and whether it pleads a legally sufficient claim. *Howard County v. Connolley,* 137 Md. App. 99 (2001); *Porterfield v. Mascari II, Inc.,* 374 Md. 402, 414 (2003).

PB in its Motion to Dismiss asserts two primary arguments. First, it argues that the applicable statute of limitations is Md. Code, Cts. & Jud. Proc., § 5-101, which provides that unless otherwise provided in the Code, a civil action must be filed within three years from the date it accrues. According to PB, no other statute of limitations displaces Section 5-101 with respect to the Named Plaintiffs three counts. Thus, because the Named Plaintiffs' claims accrued on the day they closed their

5

loan with Numax, April 1, 1998 the statute of limitations expired on April 1, 2001 before they filed their Complaint on January 14, 2002.

The Named Plaintiffs assert several arguments in an attempt to expand the period of limitation, or to toll it. First, they argue that because the Named Plaintiffs signed their loan agreements "under seal," a twelve (12) year statute of limitations under Section 5-102 displaces the three (3) year limitations period provided by Section 5-101. Alternatively, they argue that even if Section 5-101 applies to their claims, several events tolled the statute of limitations.

Second, PB argues in its Motion to Dismiss that the Named Plaintiffs lack standing to sue it, as the Named Plaintiffs never specifically allege in their Complaint that PB holds or ever held their particular note. They further assert that the Named Defendant cannot rely on the theoretical claims of other unnamed, potential class members to cure their lack of standing.

This Court will address each of these arguments below.

## A.   Plaintiffs' Claims Are Time-Barred by the Statute of Limitations

### 1.   The Applicable Statute of Limitations Period is Three Years Because Plaintiffs' SMLL and CPA Claims Are Not Actions "On" the Documents Signed "Under Seal"

Section 5-102 (a) of Md. Courts and Jud. Proc. Code provides that:

An action on one of the following specialties shall be filed within 12 years after the cause of action accrues, or within 12 years from the date of the death of the last to die of the principal debtor or creditor, whichever is sooner:

(1) Promissory note or other instrument under seal;
(2) Bond except a public officer's bond;
(3) Judgment;
(4) Recognizance;

(5) Contract under seal; or

(6) Any other specialty.

Assuming that the deed of trust and promissory note signed solely by the Named Defendants were under seal even as to the Defendants, the Named Plaintiffs claims are not "action(s) on" the documents. "It is not the manner in which an action is characterized, but, rather, its essential characteristic, that determines" the applicable statute of limitations. *Millison v. Wilzack*, 77 Md. App. 676, 684 (1989).

Here, the Named Plaintiffs have asserted claims under the SMLL and CPA.[3] They are not suing the Defendants on, or seeking to enforce, the notes or deeds of trust. They do not assert any breach of a note or deed of trust. Rather, "Plaintiff(s') underlying claim is not for a violation of any of the terms of the note, but for the violation of the statute that governed the actions taken creating the note." *Uhre v. Nationscredit Home Equity Services Corp.*, Civil No. 209234, Circuit Court for Montgomery County, Md. (Opinion and Order of November 1, 2001) (holding, as does this Court, that claims under the SMLL based on notes and deeds of trust signed by the borrowers under seal, are subject to Maryland's three (3) year statute of limitations); *see also Mazur v. Empire Funding Home Loan Trust 1977-3met al.*, Case No. 03-CV-74103-DT (U.S.D.C., E.D. Mich. January 9, 2004) ("The fact that mortgages are intertwined with the facts of this case does not mean that Plaintiffs' claims are founded upon covenants in such mortgages.")

---

[3]  Count III of the complaint is a derivative of the SMLL claim. They claim to seek declaration that the contract is void or voidable as against public policy based on Numax's purported violations of the SMLL.

Plaintiffs cite to *Pacific Mortgage and Investment Group, Ltd. V. Horn*, 100 Md. App. 311 (1994) for the proposition that when the underlying documents are signed under seal, the twelve (12) year statute of limitations applies even if the underlying claim seeks statutory relief. In *Pacific Mortgage*, husband and wife borrowers executed a mortgage loan with a lender, Pacific Mortgage. The term "under seal" was preprinted next to the borrowers' signatures on the note. *Id.* at 316. Over three years after executing the instrument, the wife, after her husband passed away, brought a suit against the lender alleging violations of the Maryland Consumer Loan Law ("MCLL"), Md. Code, Com. Law, § 12-301 *et seq. Id.* at 318-19. The MCLL is similar to the SMLL and CPA in that they all create statutory causes of action applicable to consumer lending transactions.

The Circuit Court in *Pacific Mortgage* held that "the loan was a document under seal so the 12 year statute of limitations applied to the case." *Id.* at 319. However, whether the MCLL claim actually constituted an action "on" the document under seal was not raised on appeal. The only issue presented on appeal was whether a person who signed a document under seal had to present additional extrinsic evidence that she intended the agreement to be under seal. *Id.* at 321-22. The Court of Special Appeals, in holding that she did not, specifically dispelled any notion that their affirmation implicitly reached any other limitation issue(s) by noting that "(n)o other limitation issues were asserted." *Id.* at 321, n. 1. Thus, the Named Plaintiffs may not rely on Pacific Mortgage for the proposition that the twelve

8

(12) year statute of limitations period applies to a statutory claim for actions taken in the creation of a note even where documents governing the terms of the agreement were signed under seal.

Rather, the three (3) year statute of limitations under Section 5-101 applies to claims under the SMLL and CPA. See *Miller v. Pacific Shore Funding*, 224 F. Supp. 2d 977, 985 (D. Md. 2002), aff'd. 2004 WL 144138 (4th Cir. 2004) (applying three (3) year statute of limitations to nearly identical second mortgage claims for violations of the SMLL and CPA, and to the "illegal contract" claim premised on violations of the SMLL); *Standard Fed. Sav. & Loan Ass'n.*, 76 Md. App. 452, 456-64 (1988) (applying three (3) year statute of limitations to SMLL claim); *Sterner v. Kettler Brothers, Inc.*, 123 Md. App. 303, 306-07 (1998) (applying three (3) year statute of limitations to alleged CPA claims). Accordingly, this Court holds that Section 5-101's three (3) year statute of limitations period applies to the Named Plaintiffs' claims for violations of the SMLL and CPA and to their "Illegal Contract" claim.

## 2.    Named Plaintiffs' Claims Accrued on the Date of Closing

This Court must next decide the date on which the Named Plaintiffs' claims accrued. Defendants assert that the Named Plaintiffs claims accrued on the date of closing because this is the date on which the Named Plaintiffs became aware of all the legally operative facts forming the basis of their claims. Plaintiffs urge this Court that their claims did not accrue until some time later when the Named Plaintiffs became subjectively aware that they

have a cause of action, i.e. that there was a statute prohibiting the challenged fees. Under such a theory the Named Plaintiffs' claims would not accrue until they became aware of the law giving rise to their claims. The Named Plaintiffs also argue that Numax's failure to give them a disclosure at the time of closing as purportedly required under the SMLL constitutes a fraud that would toll the statute of limitations. Finally, Plaintiffs assert that because they financed the purportedly illegal fees, under the continuation of events theory their claims would not accrue until the loans were paid in full. This Court will address each of the Named Plaintiffs' arguments in turn.

When, as here, there are no genuine issues of fact underlying the date of accrual a court may decide the date of accrual. *O'Hara v. Kovens*, 305 Md. 280, 300 (1986). Although statutes of limitations are to be strictly construed, Maryland follows the discovery rule to determine the date of accrual. *Walko Corp. v. Burger Chef Sys., Inc.*, 281 Md. 207, 211 (1977); *Murphy v. Merzbacher*, 346 Md. 525 532 (1997). Under the discovery rule, a cause of action is deemed to accrue when "the plaintiff discovers, or through the exercise of due diligence, should have discovered, the injury." *Frederick Rd. Ltd. P'ship v. Brown & Sturm*, 360 Md. 76, 95-96 (2000). "Thus, a cause of action accrues when : (1) the legally operative facts permitting the filing of a claim come into existence; and (2) the claimant has notice of the nature and cause of his injury." *Miller v. Pac. Shore Funding*, 224 F. Supp. 2d. 977 (D.Md. 2002) *citing Heron v. Strader*, 361 Md. 258, 264 (2000) and *Frederick Rd., Ltd. P'ship*, 360 Md. at 96.

In *Moreland v. Aetna U.S. Healthcare, Inc.*, 152 Md. App. 288 (2003) the Maryland Court of Special Appeals endorsed the opinion of *Miller v. Pac. Shore Funding*, 224 F. Supp. 2d. 977 (D.Md. 2002) as correctly stating Maryland's application of the discovery rule. *Miller* is a nearly identical second mortgage case where the Named Plaintiffs, as here, brought claims against lenders for violations of the SMLL and CPA and for "Illegal Contracts" over three years after they closed on the loan. In rejecting the same argument as the Plaintiffs have asserted here, the federal district court explained:

> Knowledge of *facts*, however, not actual knowledge of their legal significance, starts the statute of limitations running. *See Lumsden v. Design Tech Builders, Inc.*, 358 Md. 435, 447( ), 749 A.2d 796 ···; *Doe v. Archdiocese of Washington*, 114 Md.App. 169, 183-86, 689 A.2d 634 (1997) (explaining that a cause of action in tort generally accrues at the same time the act that constitutes the tort occurs-regardless whether the victim recognizes the act as legally wrong or comprehends the full extent of the harm). The discovery rule, in other words, applies to discovery of *facts*, not to discovery of *law*. Knowledge of the law is presumed. *See, e.g. Post v. Bregman*, 349 Md. 142, 156, 707 A.2d 806 (1998) *298 (noting that "parties to a contract are deemed to have contracted with knowledge of existing law"). Ignorance of the rights it grants and protects does not toll the statute of limitations. If plaintiffs remain unaware of their legal rights after notice of injury, the statute of limitations sets an absolute deadline for gaining awareness. A plaintiff must exercise reasonable diligence-defined by the limitations period-"in determining whether ··· particular acts or omissions causing injury are actionable in court," *Capital Dist. Physician's Health Plan v. O'Higgins*, 939 F.Supp. 992, 1000 (N.D.N.Y.1996).

*Id.* at 986-87 (Italics in the original) (footnote omitted). The court went on to hold that: (1) the closing date, the date on which the plaintiff "was charged all of the fees and expenses of which he complains," was "the date on which the legally

operative facts permitting the filing of his claims came into existence;" and (2) that the plaintiff had notice that he may have been harmed because "the charges were all expressly identified in the closing documents." *Id.* at 986 (internal quotation marks omitted).

In the instant case, there is no genuine issue of material fact with regard to the limitation issue. The Named Plaintiffs do not contest that they had knowledge of the legally operative facts on the day of closing, April 1, 1998, when they received their closing documents. Nor do they assert that the legally operative facts giving rise to their claims did not come into existence on the day of closing. As in *Miller*, the statute of limitations started running on the day of closing, April 1, 1998. And, as in *Miller*, this Court rejects Plaintiffs' knowledge of the law theory. It is not the law of Maryland and would perpetuate claims until the allegedly injured party decided to learn the law. It is an entirely subjective test, and incapable of providing any definite limitation.

The next argument the Named Plaintiffs advance to avoid the three (3) year statute of limitations is that Numax failed to provide the Named Defendants with a disclosure form under Section 12-407.1(a)(2) of the SMLL. According to the Named Plaintiffs, Numax's failure to provide them with the disclosure constituted common law fraud, thereby, tolling the statute of limitations under Section 5-203 of the Courts and Judicial Proceeding Article.

There is one significant problem with this argument: Section 12-407.1 (a) of the SMLL only requires the lender to disclose rights a borrower forfeits if the borrower intends to use the loan proceeds for commercial purposes. The language of the

12

statute is clear: "The Commissioner shall develop and prepare a form that each lender shall furnish to an applicant for a secondary mortgage loan. The form shall state the following: (1) The purpose for which the loan is to be used; (2) A disclosure that, *if the loan is for a commercial purpose,* the borrower shall forfeit certain rights." Md. Code, Com Law, § 12-407.1 (a) (emphasis added); *see also Miller,* 224 F. Supp. 2d at 984.

The Named Plaintiffs do not contend that their loans were for commercial purposes. Rather, they argue that lenders were required to give the disclosures to *all* borrowers regardless of purpose, and that such disclosure would have put them on notice that the fees they were charged violated the SMLL. This argument is without merit. The whole purpose of the disclosure form is to inform those who are borrowing for commercial purposes that they are forfeiting certain rights. The lenders are under no obligation to disclose to those borrowing for non-commercial purposes the rights they are not forfeiting because they forfeit none. Therefore, the Named Plaintiffs cannot use the fact that Numax failed to provide it with a disclosure under Section 12-407.1 as a basis for common law fraud that would toll the statute of limitations.

Finally, the Named Plaintiffs contend that because they financed the purportedly illegal fees, each payment on the mortgage either tolls the statute of limitations or constitutes its own separate wrong for limitations purposes under the continuation of events theory. According to the Named Plaintiffs' theory, part of each payment represents a portion of the financed illegal fees and expenses. Thus, any holder of the note who has received a payment on the note has received or

13

collected a portion of the illegal fees, and, therefore has violated Sections 12-405 (a)(3) and 12-411 of the SMLL. These sections of the SMLL prohibit any lender not just from charging any fees in excess of that permitted by the SMLL, but also from receiving or collecting such fees.

As the court stated in *Miller*, this "argument is ingenious, but flawed." *Miller*, 224 F. Supp. 2d at 990. The continuation of events theory provides that "in cases where there is an undertaking which requires a continuation of services, or the party's right depends on the happening of an event in the future, the statute begins to run only from the time the services can be completed or from the time the event happens." *Hecht v. Resolution Trust Corp.*, 333 Md. 324, 337 (1994). However, "(t)he wrong continued over time is different from a wrong which comes into existence or becomes known only after the passage of time." *Edwards v. Demedis*, 118 Md.App. 541, 562 (1997).

In *Edwards*, the plaintiffs alleged a cause of action for legal malpractice. The first allegedly negligent advice they received was far outside the statute of limitations period. *Id.* at 551 & 561. Plaintiffs contended their claims were not time-barred because they continued to receive the negligent advice well within the limitations period. *Id.* Having concluded that the plaintiffs received notice of the purported wrong and of the resultant harm outside the limitations period as well, the Court of Special Appeals held that the continued advice received within the limitations period was simply part of the original. *Id.* at 562 & 566. Accordingly the Court of Appeals held that plaintiffs' claims were barred by the statute of limitations. *Id.*

14

Likewise, the Named Plaintiffs suffered one distinct injury on the date of closing when they were charged the allegedly excessive fees. That they paid for these charges over time, as the plaintiffs in *Edwards* continued to receive negligent advice, may be a wrong that continues over time, but each payment is not a separate and distinct wrong. The payments are the result of the Named Plaintiffs' election to finance charges imposed by Numax only once. Moreover, they suffered the harm immediately when they signed the legally enforceable note rather than tendering payment in cash. *See Miller v. Pacific Shore Funding*, 2004 Westlaw 144138, *4 (4th Cir. 2004) (affirming Miller, 224 F. Supp. 2d 977 cited throughout this Opinion). And, the Named Plaintiffs do not contend that they did not receive notice that they were charged the fees by way of their closing documents. In the words of the *Miller* court addressing this same argument, the "punctuated, charging, receipt, and collection are no more than the lingering, ongoing, continuing aspects of a unitary action initiated more than three years ago." *Miller*, 224 F. Supp. 2d at 990.

As the Named Plaintiffs were charged the allegedly excessive fees and expenses on April 1, 1998, the day of closing, and they received notice they were charged these fees on the same day, yet chose to file suit more than three-years later on January 14, 2002, the Named Plaintiffs SMLL, CPA and "Illegal Contract" claims are time-barred under Section 5-101 of Maryland's Courts and Procedures Article.

## B.    The Named Plaintiffs Lack Standing to Pursue Their Claim Against PB

In its Motion to Dismiss, PB also asserts that the Named Plaintiffs lack standing to file a claim against all defendants except the originating lender because they failed to allege that any of the non-originating defendants specifically holds or ever held their particular note, and, thus failed to allege any injury-in-fact or breach of contract. In other words, PB argues that the Named Plaintiffs failed to plead the jurisdictional requirements as to these non-originating defendants and that the case was filed as a class action does not cure this fundamental defect. Whether couched in terms of a lack of standing or as a failure to state claim, this Court agrees that PB, as a non-originating lender, must be dismissed from this action.

"Generally, whether a party has standing to sue depends on whether that party has an actual, real and justiciable interest susceptible of protection through litigation." *Mayor and City Council of Ocean City v. Purnell-Jarvis, Ltd.*, 86 Md. App. 390, 403 (1991). Justiciability, and hence standing, requires an actual controversy exist between the two parties. *Reyes v. Prince George's County*, 281 Md. 279, 287-88 (1977). The standing requirement focuses on the "interestedness" of the party, specifically whether the party asserting the claim has a "legal interest such as one of property, one arising out of contract, one protected against tortious invasion, or one founded on a statute which confers a privilege." *Committee For Responsible Development on 25th Street v. Mayor & City Council of Baltimore*, 137 Md. App. 60, 72 (2001) (internal quotation marks and citations omitted). Thus, if a plaintiff fails to allege any actual controversy susceptible of protection through

16

litigation with regard to a specific defendant, the case against that defendant should be dismissed for lack of standing. *See State Bd. of Public Welfare v. Myers*, 224 Md. 246, 252 (1961) (dismissing claims against certain defendants *sua sponte* for lack of standing because plaintiff failed to allege any circumstances that would entitle him to any relief from those defendants even if the Court ruled in his favor with respect to those defendants).

To have standing in the federal courts, a plaintiff must allege (1) an injury in fact (2) traceable to the actions of the defendant and not to some independent third party (3) that likely can be redressed by a favorable decision of the court. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 5601-61 (1992); *Friends of the Earth, Inc. v. Gaston Copper Recycling Corp.*, 204 F.3d 149, 154 (4th Cir. 2000). These requirements are quite similar to Maryland's standing and justiciability requirements outlined above, and provide a useful framework for addressing the standing issue.

Moreover, the named plaintiff in a class action lawsuit must have individual standing against each defendant; he or she cannot rely on the theoretical claims of unnamed potential class members to cure his or own standing defect. *Myers*, 224 Md. at 252. In *Myers*, an African-American male, on his own behalf and for others similarly situated, sought a declaratory judgment striking down racial segregation in certain state schools. *Id.* at 248. The schools challenged were segregated into four categories: (1) all male, all African-American; (2) all male, all Caucasian; (3) all female, all African-American; and (4) all female, all Caucasian. *Id.* The Court of Appeals raised the issue of standing *sua sponte* and held that Myers, an African-American male did not have standing to challenge the

segregation in the all female schools and the all African-American male school. *Id.*
at 252. The Court reasoned that no matter what relief the Court granted, Myers
could not be admitted into the all female schools (the issue of sex segregation was
not raised). *Id.* Nor did Myers have standing to challenge the segregation in the
African-American school because he could already be admitted into the school,
and, thus any declaration that the school was unconstitutionally racially
segregated would have no effect on him. *Id.* In other words, Myers suffered no
injury-in-fact or any favorable decision would not remedy any harm suffered by
Myers. Moreover, the Court held that "the necessity of standing is not obviated by
seeking relief in the form of a class action." *Id.* Thus, that the purported class
members included African-American females did not cure Myers own lack of
standing. *Id.* Rephrased, the named plaintiff in a class action lawsuit must have
standing to assert claims against each defendant.

Likewise, the Named Plaintiffs in the instant action lack standing to assert
claims against the non-originating defendant because they have failed to assert
that any one of them ever specifically holds or ever held the Named Plaintiffs' note.
The Named Plaintiffs only allege that PB "is (or at one point during the life of the
loan was) a holder of mortgage notes related to the mortgage loans made by
(Numax) to Plaintiffs and/or the class." Complaint at ¶ 20. This falls well short of
alleging any contractual relationship between the Named Plaintiffs and PB. By
employing the term "and/or" the Named Plaintiffs carefully avoid alleging that PB
hold or held their specific note, *i.e.* that PB was an assignee or purchaser of the
Named Plaintiffs' note. By the terms of the Complaint, PB may hold or have held

loans made to the unnamed potential class members, and not the actual Named Plaintiffs. This shotgun approach fails to allege any specific contractual relation and, thus, fails to trace any harm suffered by the Named Plaintiffs to PB. And, even if this Court should render a decision in favor of the Named Plaintiffs, it can only be said that such a decision *may* provide a remedy to the Plaintiffs' purported harm. The Named Plaintiffs, however, have failed to establish that a favorable decision would likely redress their injuries. It is just as or even more likely, considering the number of non-originating lenders facing similar allegations in this case (a total of about fifteen), that it *may not*.

For the same reasons and same factual allegations, the Named Plaintiffs have also failed to state a claim against PB. The Complaint fails to identify any contractual relationship. It fails to identify PB as an assignee or purchaser of the Named Plaintiffs' note. Without stating that PB actually held or ever held their note, there is no claim under the SMLL, CPA or "Illegal Contract" counts against PB.

As in *Myers*, the Named Plaintiffs cannot rely on the theoretical claims of unnamed potential class members who may have a claim against PB to cure this defect. The Named Plaintiffs lack standing to assert the claims of others: they must assert their own claims against each defendant. That the case is a class action does not excuse the Named Plaintiffs from asserting their own claims.

Lastly, the Named Plaintiffs argue that the standing requirement should be relaxed under the "juridical link" theory. The juridical link doctrine "answers the question of whether two defendants are sufficiently linked so that a plaintiff with a cause of action against only one defendant can also sue the other defendant

19

under the guise of class certification (even though the named plaintiff has no actual controversy with the second defendant)." *In re Eaton Vance Corp. Secs. Litig.*, 220 F.R.D. 162, 165 (D. Mass. 2004). This doctrine, even in those jurisdictions where it has been adopted, has extremely limited application. It applies when "named plaintiff's injuries are the result of a conspiracy or concerted schemes between the named defendants, (or where) it would be expeditious to combine the defendants into one action because they are juridically related." *Id.* at 170; see also *Payne v. County of Kane*, 308 F.3d 673, 678-79 (7th 2002); *LaMar v. H&B Novelty & Loan Co.*, 489 F.2d 461 (9th Cir. 1973); *Easter v. Am. West Fin.*, 381 F.3d 948, 962 (9th Cir. 2004); *Faircloth v. Fin. Asset Secs. Corp. Mego Mortg. Homeowner Loan Trust*, 87 Fed. Appx. 314, 318 (4th Cir. 2004).

It arises only when there is such a strong connection amongst the defendants that standing as to one is sufficient to convey standing as to the others. "This doctrine is premised on the notion that the class, not the class representative, is the relevant legal entity" for standing purposes. *Faircloth*, 87 Fed. Appx. at 318. This strong connection generally occurs only in cases where the defendants are acting in concert or in a conspiracy, there is a contractual relationship among all the defendants, or when the suit is against related government agencies. See *Payne, v. County of Kane*, 308 F.3d at 678-79; *LaMar*, 489 F.2d at 466; *Easter v. Am. West Fin.*, 381 F.3d at 962; *Faircloth*, 87 Fed. Appx. at 318.

As a threshold matter, no Maryland court, state or federal, has adopted the juridical link doctrine. Nor has the Fourth Circuit. See *Faircloth*, 87 Fed. Appx. at 318 (specifically noting that the Fourth Circuit has yet to recognize the juridical link

20

doctrine). In fact, the U. S. District Court for the District of Maryland has rejected the application of the juridical link doctrine as a mechanism to avoid the standing requirement. See *Popoola v. MD-Individual Practice Ass'n*, 230 F.R.D. 424, 431-32 (D.Md. 2005). This Court is not inclined to adopt the juridical link theory, either.

Moreover, even if this Court were to adopt the juridical link doctrine, it would not be applicable to the instant action. The Named Plaintiffs' claims do not fit within the categories of cases to which the doctrine applies. First, the instant action is not one against related government agencies. Second, as discussed above, the Named Plaintiffs have failed to allege any contract among the defendants. Finally, the Named Plaintiffs have not alleged that the defendants conspired or acted in concert to cause the Named Plaintiffs' injuries. In fact, as other courts have noted in similar second mortgage class actions, the non-originating lenders are actually competitors, "thus undercutting any argument that they did, or would, act in concert with one another." *Alexander v. PSB Lending Corp.*, 800 N.E. 2d 984, 993 (Ind. App. 2003); *see also* Easter, 381 F.3d at 962 (rejecting juridical link doctrine in second mortgage case partly because the non-originating lenders "are competitors for the purchase of secured loans in the same market place"). Accordingly, this Court holds that even if Maryland were to adopt the juridical link doctrine, it would not apply in the instant action.

For these reasons, this Court holds that the Named Plaintiffs lack standing to assert their claims against PB, a non-originating defendant. They have failed to allege any contractual relationship between themselves and PB, and, accordingly, the Complaint fails to allege any actual controversy between themselves and PB.

21

In the same breath, this Court finds that for the same reasons and based on the same factual allegations, the Named Plaintiffs have also failed to state a claim against PB. That they filed their claims as a class action does not cure this fundamental defect, and the juridical link, even if adopted, would be inapplicable.

### Conclusion

For the reasons set forth above, this Court will grant PB's Motion to Dismiss for the reasons that (1) the Named Plaintiffs lack standing to sue, or alternatively failed to state a claim against PB, a non-originating lender, and (2) the Named Plaintiffs' claims are time-barred under the applicable statute of limitations

An Order reflecting the above analysis is attached.

_8/25/06_
Date

**Kaye A. Allison**
The Judge's Signature Appears
On the Original Document

22