## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| LYNN FULMORE | * | |
| | * | |
| v. | * | Civil No. – JFM-09-2028 |
| | * | |
| PREMIER FINANCIAL CORP. | * | |
| JUDITH MOFFITT | * | |
| | * | |
| v. | * | Civil No. – JFM-09-2029 |
| | * | |
| BALTIMORE AMERICAN MORTGAGE | * | |
| EDWIN RUBLE | * | |
| | * | |
| v. | * | Civil No. – JFM-09-2056 |
| | * | |
| THE MORTGAGE CONSULTANTS, INC. | * | |
| WILLIAM RODWELL | * | |
| | * | |
| v. | * | Civil No. – JFM-09-2202 |
| | * | |
| PSB LENDING CORP., INC. | * | |
| DEREK MOHRE | * | |
| | * | |
| v. | * | Civil No. – JFM-09-2246 |
| | * | |
| PACIFIC SHORE FUNDING | * | |
| JAMES MITCHELL, SR. | * | |
| | * | |
| v. | * | Civil No. – JFM-09-2287 |
| | * | |
| PSB LENDING CORP., INC. | * | |
| CHARLES HEBB | * | |
| | * | |
| v. | * | Civil No. – JFM-09-2334 |
| | * | |
| PREMIER FINANCIAL CORP. | * | |

| | | |
|---|---|---|
| EDWIN RUBLE | * | |
| | * | |
| | * | |
| v. | * | Civil No. – JFM-09-2484 |
| | * | |
| MORTGAGE CAPITAL INVESTORS, INC. | * | |
| DENNIS TROJANOWSKI | * | |
| | * | |
| | * | |
| v. | * | Civil No. – JFM-09-2588 |
| | * | |
| UNITED MORTGAGE, INC., ET AL. | * | |
| LAWRENCE STEWARD, ET AL. | * | |
| | * | |
| | * | |
| v. | * | Civil No. – JFM-09-2694 |
| | * | |
| UMLIC VP, ET AL. | * | |
| TYRONE CONWAY | * | |
| | * | |
| | * | |
| v. | * | Civil No. – JFM-09-3022 |
| | * | |
| HSBC MORTGAGE SERVICES, INC. | * | |
| DENNIS MCLEOD | * | |
| | * | |
| | * | |
| v. | * | Civil No. – JFM-09-3218 |
| | * | |
| PB INVESTMENT COPRORATION | * | |
| DAVID HUTCHISON | * | |
| | * | |
| | * | |
| v. | * | Civil No. – JFM-10-82 |
| | * | |
| SOVEREIGN BANK | * | |
| GERALDINE PHILLIPS | * | |
| | * | |
| | * | |
| v. | * | Civil No. – JFM-10-252 |
| | * | |
| RESIDENTIAL FUNDING CO. | * | |

| | | |
|---|---|---|
| LINDA OREM | * | |
| | * | |
| | * | |
| v. | * | Civil No. – JFM-10-1177 |
| | * | |
| PACIFIC SHORE FUNDING | * | |
| GEORGE LIEBMANN | * | |
| | * | |
| | * | |
| v. | * | Civil No. – JFM-10-1434 |
| | * | |
| PB INVESTMENT CORPORATION | * | |

******

OPINION

These are a series of cases in which Plaintiffs assert claims in connection with second mortgage loans made to them some years ago. In each case the originating lenders ("the Loan Originators") assigned Plaintiffs' loans to other financial institutions ("the Assignees"). Many of the Loan Originators have dissolved and are now judgment proof. Plaintiffs have asserted claims against the Assignees. The Assignees have filed motions to dismiss. For the reasons that follow, the motions will be granted.

Two related facts are essential to my analysis and should be stated at the outset. First, all of the loans in question have been paid off by the borrowers. Second, because the loans have been paid off, none of the Assignees are attempting to recover anything from Plaintiffs in these actions. Instead, this case involves affirmative claims by the borrowers against the Assignees for the loans and interest the borrowers have already paid and for various statutory penalties.

I.

All of the related cases were filed as class action complaints in the Circuit Court for Baltimore City between 2001 and 2003. The Circuit Court determined that the Plaintiffs' class claims were overbroad and dismissed the complaints. Plaintiffs appealed this decision to the

3

Maryland Court of Appeals, where it was affirmed. *See Master Fin., Inc. v. Crowder*, 409 Md. 51, 972 A.2d 864 (2009). Following *Crowder*, the Plaintiffs reformulated and refiled their class complaints. All of the cases have since been removed by the Assignees to this court under diversity jurisdiction and/or the federal Class Action Fairness Act. *See* 28 U.S.C. §§ 1332(d), 1453, and 1711–1715.

On February 26, 2010, I heard argument on the Defendants' motions to dismiss the Plaintiffs' original complaints. Following the argument, I granted the Plaintiffs' request for leave to amend their complaint to plead facts showing that the Home Ownership and Equity Protection Act ("HOEPA"), 15 U.S.C. § 1641(d), applied to their loans.

## II.

Under Fed. R. Civ. P. 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." This pleading standard does not require "detailed factual allegations," but it demands more than an unadorned accusation. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A pleading that offers no more than "a formulaic recitation of the elements of a cause of action" is insufficient. *Id.* To overcome a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must contain sufficient facts to "state a claim to relief that is plausible on its face." *Id.* at 570. Therefore, the facts pled must permit the court to draw a reasonable inference that the defendant is liable for the misconduct alleged. *Id.* at 556.

"The purpose of a Rule 12(b)(6) motion is to test the sufficiency of a complaint; importantly, a Rule 12(b)(6) motion does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999) (internal quotation marks and alterations omitted). When ruling on such a motion, the court must "accept the well-pled allegations of the complaint as true" and "construe the facts and

reasonable inferences derived therefrom in the light most favorable to the plaintiff." *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997) (citation omitted). However, the court is not required to accept unsupported legal assertions. *See Papasan v. Allain*, 478 U.S. 265, 286 (1986); *Revene v. Charles County Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989). Nor can a plaintiff avoid a motion to dismiss where the "well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct." *Ashcroft v. Iqbal*, --- U.S. ---, 129 S. Ct. 1937, 1950 (2009). In evaluating a motion to dismiss, this court may consider the complaint and "documents attached to the complaint." *Sec'y of State for Defence v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007). The court may also consider a document the defendant has attached to its motion to dismiss as long as it is integral to the complaint and authentic. *Id.*

III.

At various times throughout these proceedings Plaintiffs have asserted three separate state law claims: (1) under Maryland common law, (2) under the Maryland Secondary Mortgage Loan Law ("SMLL"), Md. Code Ann., Com. Law, §§ 12-401 to 12-415; and (3) under the Uniform Commercial Code ("UCC").

A.

Under Maryland common law it is clear that "there is no implied assumption by an assignee of his assignor's obligations under the original contract merely by virtue of the assignment." *P/T Ltd. II v. Friendly Mobil Manor, Inc.*, 79 Md. App. 227, 234, 556 A.2d 694, 697 (Ct. Spec. App. 1989). As a result, "[t]o be liable for duties under contract, the assignee must have assumed liability expressly." *Homa v. Friendly Mobil Manor, Inc.*, 93 Md. App. 337, 353, 612 A.2d 322, 330 (Ct. Spec. App. 1992). Thus, as Plaintiffs now appear to acknowledge, there is no basis to claim under Maryland common law that the Assignees assumed any liability

to Plaintiffs. *Cf. Petry v. Wells Fargo Bank, N.A.*, 597 F. Supp. 2d 558, 565 (D. Md. 2009) (granting a motion to dismiss claims asserted against an assignee under the Maryland Finder's Fee Act and Consumer Protection Act because "Maryland courts have not yet extended the scope of . . . assignee liability to statutes providing for civil liability where the statute does not expressly impose this additional avenue of liability").

B.

The SMLL prohibits a person from making a secondary mortgage loan unless the person is licensed or is explicitly exempt from licensing under the Maryland Mortgage Lender Law ("MMLL"). *See* § 12-402. The SMLL also limits the amount of interest, fees, points, commissions, and other charges that may be charged in connection with a secondary mortgage and requires specific disclosures to certain borrowers. *See* §§ 12-404 to 12-406, 12-407.1. At an earlier stage of this litigation it appeared that plaintiffs were arguing that the SMLL creates assignee liability. They no longer do so.[1] Instead, they contend that some of the Assignees meet the definition of "lender" under the SMLL and thus are liable under the SMLL in their capacity as lenders.

The fallacy in Plaintiff's argument is that none of the Assignees fall within the definition of "lender" under the SMLL. Section 12-401(b) defines "lender" to mean "(1) [a] licensee, or (2) a person who makes a secondary mortgage loan but is exempt expressly from the licensing

---

[1] Plaintiffs' concession that the SMLL does not create assignee liability is eminently correct. The relevant provisions of the SMLL apply only to "lenders" and make no mention of assignees. Moreover, as discussed in the text, *infra*, assignees are not included in the SMLL definition of "lender." *See* § 12-401(b). It should also be noted that when the Maryland General Assembly intended the SMLL or other mortgage regulations to apply to entities other than "lenders," it so stated. *See* § 12-403(a) ("A *person* may not advertise directly or indirectly in the State any false or misleading statement . . . ." (emphasis added)). Likewise, when the General Assembly has intended to create assignee liability in the lending market, it has done so expressly. *See* Md. Code Ann., Com. Law § 12-109.2(a)(3) (stating that "lender" includes "a lender and assignee of a lender").

6

requirements of the [MMLL]." Section 12-401(c), in turn, defines "licensee" as "a person who is licensed under the [MMLL]." None of the Assignees are licensed under the MMLL or expressly exempted from the licensing requirements of the MMLL. Plaintiffs acknowledge this, but they argue that some of the Assignees, particularly those engaged in mortgage servicing, should have been licensed under the MMLL and that the SMLL should be read to encompass all entities who should have been licensed under the MMLL. Although the SMLL arguably should say this, it simply does not say this. Furthermore, it should be noted that entities that should be licensed under the MMLL, but who do not obtain licenses, are subject to serious penalties under the MMLL itself, including prosecution for a felony, the imposition of a fine up to $50,000, imprisonment up to ten years, and a substantial limitation on what it can collect under a loan that it makes (principal only, no interest, cost, finder's fees, broker fees, or other charges). *See* Md. Code Ann., Fin. Inst. § 11-523.[2]

C.

In their earlier complaints, Plaintiffs asserted a claim under section 3-305 of the Maryland Commercial Code. In their third amended complaints, Plaintiffs do not assert such a claim but do assert a claim under section 3-306 of the Maryland Commercial Code. Neither claim has

---

[2] In *National City Bank of Indiana v. Turnbaugh*, 367 F. Supp. 2d 805 (D. Md. 2005), Judge Blake was required to decide whether section 11-253, as well as other provisions of the MMLL, is preempted by federal law as to banks chartered and organized under the National Bank Act. (As indicated in note 3, *infra*, I am not required to decide here the analogous question of whether the SMLL is preempted as to certain financial institutions regulated under federal law). She decided that the MMLL is preempted as to such banks, and therefore the penalties set forth in section 11-253 could not be imposed upon banks organized and chartered under the National Bank Act. Aside from the point that the reasoning of *National City Bank of Indiana* may be equally applicable to the SMLL, Judge Blake's conclusion that section 11-253 cannot be enforced against banks chartered and organized under the National Bank Act does not diminish the materiality—in discerning the intent of the Maryland General Assembly in enacting the definitional provisions of the SMLL—of the fact that on its face section 11-523 does impose penalties upon entities that should be licensed but who do not obtain licenses under the MMLL.

7

merit.

> Section 3-305 provides as follows:
>
> (a) Except as stated in subsection (b), the right to enforce the obligation of a party to pay an instrument is subject to the following:
> (1) A defense of the obligor based on (i) infancy of the obligor to the extent it is a defense to a simple contract, (ii) duress, lack of legal capacity, or illegality of the transaction which, under other law, nullifies the obligation of the obligor, (iii) fraud that induced the obligor to sign the instrument with neither knowledge nor reasonable opportunity to learn of its character or its essential terms, or (iv) discharge of the obligor in insolvency proceedings;
> (2) A defense of the obligor stated in another section of this title or a defense of the obligor that would be available if the person entitled to enforce the instrument were enforcing a right to payment under a simple contract; and
> (3) A claim in recoupment of the obligor against the original payee of the instrument if the claim arose from the transaction that gave rise to the instrument; but the claim of the obligor may be asserted against a transferee of the instrument only to reduce the amount owing on the instrument at the time the action is brought.
> (b) The right of a holder in due course to enforce the obligation of a party to pay the instrument is subject to defenses of the obligor stated in subsection (a)(1), but is not subject to defenses of the obligor stated in subsection (a)(2) or claims in recoupment stated in subsection (a)(3) against a person other than the holder.

In effect, these sections provide that the defenses to the enforcement of an obligation stated in section 3-305(a)(1) are good against any assignee, including a holder in due course, and that the defenses stated in section 3-305(a)(2) and a "claim in recoupment" as defined in section 3-305(a)(3) can be asserted against any assignee who is not a holder in due course. The Assignees have not yet filed an answer and therefore have not yet declared holder-in-due-course status. That, however, is immaterial because section 3-305 creates no affirmative liability of any assignee to the obligor. It concerns only *defenses* and "a claim in recoupment" which can be used, as provided in section 3-305(a)(3), "only to reduce the amount owing on the instrument at the time the action is brought." As stated at the outset of this Opinion, all of the loans involved in this case have been paid in full, and the Assignees are not seeking to recover any amount whatsoever from Plaintiffs.

Section 3-306 is equally unhelpful to Plaintiffs. That section provides:

> A person taking an instrument, other than a person having rights of a holder in due course, is subject to a claim of a property or possessory right in the instrument or its proceeds, including a claim to rescind a negotiation and to recover the instrument or its proceeds. A person having rights of a holder in due course takes free of the claim to the instrument.

Plaintiffs' reliance upon section 3-306 is perplexing. On its face it applies to controversies between persons who have competing claims to an "an instrument or its proceeds," not to claims asserted by the obligor against an assignee. Moreover, if section 3-306 means what Plaintiffs apparently contend it means—i.e., if section 3-306 means that an obligor can assert any claim against an assignee, including one for affirmative relief, regardless of whether the assignee is a holder in due course—this would render meaningless the carefully drawn provisions of section 3-305(a)(3) and section 3-305(b). Plaintiffs' reliance on *Williams v. Aries Fin., LLC*, No. 09-CV-1816, 2009 WL 3851675 (E.D.N.Y. Nov. 18, 2009), is misplaced. That case did not address the issues presented here, and it referred to section 3-306 of the New York Uniform Commercial Code, which differs substantially from section 3-306 of the Maryland Commercial Code. *See id.* at *3. Indeed, the New York Code does not contain the same version of section 3-305 as the Maryland Code, which limits the claims based on the conduct of an assignor that an obligor may assert against an assignee.[3] *Compare* N.Y. U.C.C. § 3-305, *with* Md. Code Ann., Com. Law § 3-305.

IV.

There remains to be considered the effect of the Home Ownership and Equity Protection Act ("HOEPA") upon Plaintiffs' claims. HOEPA provides in relevant part that "[a]ny person

---

[3] Because I find that Plaintiffs have no viable claim under Maryland law, I need not consider the arguments made by some of the Assignees that any state law claims against them are preempted by federal statutes and regulations that govern their conduct.

who purchases or is otherwise assigned a mortgage referred to in section 1602(aa) of this title shall be subject to all claims and defenses with respect to that mortgage that the consumer could assert against the creditor of the mortgage." 15 U.S.C. § 1641(d)(1). Plaintiffs contend that although this section does not create a federal cause of action, it renders the Assignees liable under state law for any liability to Plaintiffs to which the Loan Originators were subject.

Conceptually, Plaintiffs' view of § 1641(d)(1) is enigmatic. It seems clear to me that if a plaintiff has a cause of action against Defendant *A* but not against Defendant *B* under state law and then purportedly obtains a cause of action against Defendant *B* solely as the result of a federal statute, at minimum the plaintiff's well-pleaded complaint must raise a federal question.[4] In any event, whether the claim is viewed as one arising under state or federal law, I find that § 1641(d)(1) does not create any claim on behalf of Plaintiffs for affirmative relief against the Assignees. Rather, it only provides that Plaintiffs properly could have asserted any defense and recoupment claim they had against Loan Originators in the event that the Assignee had brought an action against them to collect on the loan, regardless of whether the Assignees asserted a defense based upon alleged holder-in-due-course status.

I recognize, as argued by Plaintiffs, that the word "claims," if read literally, would seem to encompass a claim for affirmative relief as well as a claim reducing or eliminating a debt owed by a borrower. However, at the time of HOEPA's enactment in 1994, that was not the meaning of "claims" under relevant case law. Courts had interpreted the UCC to mean that an assignee who took an instrument "subject to . . . claims and defenses" was not subject to affirmative claims for relief based on the assignor's misconduct, but the assignee instead faced only the risk that his own claim could be reduced or eliminated because of the misconduct of the assignor.

---

[4] For this reason, I am today entering an order denying a motion to remand a related case that was removed to this court by the defendants.

*See, e.g.*, *Murr v. Selag Corp.*, 113 Idaho 773, 780, 747 P.2d 1302, 1309 (Ct. App. 1987) ("[An] obligor on the note may assert setoffs against it or may have defenses that make the note uncollectible, but the obligor cannot make affirmative claims for damages against the note assignee based upon some tort or breach of contract by the original payee."); *Michelin Tires (Can.) Ltd. v. First Nat'l Bank of Boston*, 666 F.2d 673 (1st Cir. 1981) (Section 9-318(1)(a) of the UCC, as it was then in effect, did not create affirmative rights against an assignee); 4 William D. Hawkland & Lary Lawrence, Uniform Commercial Code Series § 3-301:1 (1999) ("[Former s]ection 3-306 sets forth the claims and defenses available to the obligor to *defeat recovery* by a party not having the rights of a holder in due course." (emphasis added)).

    *United Overseas Bank v. Veneers, Inc.*, 375 F. Supp. 596 (D. Md. 1974), a case discussing the original version of UCC section 3-306, which was in effect when HOEPA was passed, is to the same effect. In that case Judge Blair noted that under Maryland law an obligor could assert only a claim for recoupment (i.e., one based on a claim against the assignor arising from the same transaction as gave rise to the assignee's enforcement action), not a claim for a setoff (i.e., one based on a claim extrinsic to the transaction underlying the assignee's claim against the obligor). *Id.* at 609–10. It follows *a fortiori* that, as it was understood when HOEPA was passed, the phrase "subject to . . . claims and defenses" did not encompass claims for affirmative relief against an assignee for wrongs committed against the obligor by the assignor.

    Moreover, reading the word "claims" to mean only claims that reduce or eliminate the obligor's liability to the assignee does not strip HOEPA of meaning. If HOEPA had not been enacted, an assignee could assert holder-in-due-course status as an affirmative defense. In that capacity, the assignee would not have been subject to any defenses or recoupment claims based upon the misconduct of the assignor. This is not to say that if in the present cases the Assignees

11

eventually were to argue that they are holders in due course, I would find they had such status. However, the mere fact that an assignee would be entitled to assert that it is a holder in due course, not subject to defenses and claims based upon the assignor's misconduct, is a valuable litigation right. The legislative history of HOEPA clearly reflects that the statute was intended to abolish that right in regard to high-cost mortgage loans by mirroring the "Holder Rule" promulgated by the Federal Trade Commission with regard to "consumer installment" loans. *See* S. Rep. No. 103-169, at 28 (1994), *reprinted* in 1994 U.S.C.C.A.N. 1881, 1912. That rule merely deprived certain assignees of holder-in-due-course status.

Plaintiffs rely upon one case, *Bryant v. Mortgage Capital Res. Corp.*, 197 F. Supp. 2d 1357 (N.D. Ga. 2002), that supports their position. *Bryant* is somewhat perplexing in that after citing the relevant legislative history, the court immediately concluded that "section 1641(d)(1) provides plaintiffs with the affirmative right to assert claims against [the assignee] based solely upon [the assignor's] independent and allegedly unlawful conduct in connection with the issuance of plaintiffs' loans." *Id.* at 1365. Although it appears no court of appeals has been asked to resolve the question, all other trial courts that have considered the effect of § 1641(d)(1) find, contrary to the result reached in *Bryant*, that § 1641(d)(1) does not create affirmative liability on behalf of assignees but only prevents them from asserting a holder-in-due-course defense. *See, e.g.*, *Dash v. FirstPlus Home Loan Trust, 1996-2*, 248 F. Supp. 2d 489, 506 (M.D.N.C. 2003); *Faircloth v. Nat'l Home Loan Corp.*, 313 F. Supp. 2d 544, 551 n.11 (M.D.N.C. 2003), *aff'd sub nom. Faircloth v. Fin. Asset Sec. Corp. Mego Mortgage Homeowner Loan Trust*, 87 F. App'x 314 (4th Cir. 2004) (unpublished); *Mull v. Alliance Mortgage Banking Corp.*, 219 F. Supp. 2d 895, 910 (W.D. Tenn. 2002); *Vandenbroeck v. ContiMortgage Corp.*, 53 F. Supp. 2d 965, 968 (W.D. Mich. 1999); *Baker v. Century Fin.*, No. 01-0903-CV-W-SOW-

ECF, 2001 U.S. Dist. LEXIS 24320, at *7 (W.D. Mo. Nov. 19, 2001); *In re Harvey*, No. 02-32412DWS, 02-1386, 203 WL 21460063, at *6 (Bankr. E.D. Pa. June 9, 2003). I fully agree with the reasoning of these cases and hold that § 1641(d)(1) does not impose affirmative liability upon the Assignees for the misconduct of the Loan Originators.[5]

For these reasons the Assignees' motions to dismiss will be granted. I will meet with counsel in the near future to confer about the most expeditious way to proceed in resolving the myriad issues raised in this litigation.[6]

Date: October 29, 2010     /s/
J. Frederick Motz
United States District Judge

---

[5] If I am wrong in my conclusion, a substantial limitations question is presented: Does the rather extraordinary twelve years limitations period found by the Maryland Court of Appeals to apply to an obligor's claim against an originating lender, *see Crowder*, 972 A.2d at 873–77, also apply to an obligor's claim against an assignee, or does the one year limitation set by HOEPA, 15 U.S.C. § 1641(d)(2), apply? With respect to this issue, it is to be noted that in *Bryant* itself the court found that plaintiffs' claims under the Truth in Lending Act (of which HOEPA is a part) were time-barred. *See* 197 F. Supp. 2d at 1366–68.

[6] I should note that I do not plan, as requested by Plaintiffs, to certify the state law questions for decision by the Maryland Court of Appeals. I do not consider "the available state law" to be so "insufficient" that certification is appropriate. *See Roe v. Doe*, 28 F.3d 404, 407 (4th Cir. 1994). Indeed, I believe that the only question which is even arguably "close" is the federal one of whether § 1641(d)(1) imposes affirmative liability upon assignees for the misconduct of assignors. The Fourth Circuit can resolve that question on appeal of my ruling.